FILED

IN THE UNITED STATES DISTRICT COURT FOR
THE NORTHERN DISTRICT OF ALABAMA
MIDDLE DIVISION

97 JAN 23  PH 3: 10

U.S. DISTRICT COURT
N.D. OF ALABAMA

JUDITH A. NEELLEY,            )
                             )
        Petitioner,           )
                             )
v.                           )          CV-96-PT-1381-M
                             )
JOHN EDDY NAGLE,              )
                             )
        Respondent.           )

**ENTERED**

JAN 2 3 1997

## MEMORANDUM OPINION

## BACKGROUND

On September 28, 1982, Judith Ann Neelley (Petitioner) killed Lisa Ann Millican in

DeKalb County, Alabama.  On October 10, 1982, Petitioner was arrested in Murfreesboro,

Tennessee on unrelated charges involving forged checks or money orders at a Murfreesboro bank.

On the following October 14th, Special Agent Bill Burns of the Federal Bureau of Investigation

interviewed Petitioner.  Immediately after the interview with Agent Burns, Petitioner waived

extradition from Tennessee and was transferred to Fort Payne, Alabama on October 15, 1982.

That same day, Petitioner was charged with murder in a complaint filed in DeKalb County and

arrested.

The trial court ruled that Petitioner was indigent and appointed Robert French (French)

and Stephen Bussman (Bussman) as her counsel.  French and Bussman represented Petitioner at

trial.  French continued to represent Petitioner on direct appeal from her conviction and in her

first state post-conviction proceedings.

1

## PROCEDURAL HISTORY

On October 27, 1982, Petitioner was indicted by the DeKalb County, Alabama grand jury on three counts of capital murder pursuant to ALA. CODE § 13A-5-40(a)(1) (1975).  On March 22, 1983, Petitioner was convicted of the capital offense of murder during a kidnaping in violation of ALA. CODE § 13A-5-40(a)(1) (1975).  By a vote of ten to two, the jury recommended that Petitioner be punished by life imprisonment without parole.  On April 18, 1983, the trial judge rejected the jury's recommendation and sentenced Petitioner to death by electrocution.

On May 17, 1983, Petitioner filed a Motion for a New Trial that was subsequently heard by the trial court on June 21 and July 1, 1983.  On September 6, 1983, the court denied the Motion.

On direct appeal, the Alabama Court of Criminal Appeals affirmed Petitioner's conviction and death sentence.  Neelley v. State, 494 So. 2d 669 (Ala. Crim. App. 1985).  The Alabama Supreme Court affirmed this decision.  Ex parte Neelley, 494 So. 2d 697 (Ala. 1986).  The United States Supreme Court denied the petition for writ of certiorari.  Neelley v. Alabama, 480 U.S. 926, 107 S. Ct. 1389, 94 L. Ed.2d 702 (1987).

On May 18, 1987, Petitioner filed her first petition for state post-conviction relief.  On August 12 and 14, 1987, the trial court conducted an evidentiary hearing.  On October 9, 1987, the trial court denied the petition.

On appeal, the Alabama Court of Criminal Appeals affirmed the trial court without opinion.  Neelley v. State, 531 So. 2d 69 (Ala. Crim. App. 1988).  The Alabama Supreme Court denied the petition for writ of certiorari.  Ex parte Neelley, 537 So. 2d 65 (Ala. 1988).  The

2

United States Supreme Court then denied the petition for writ of certiorari. Neelley v. Alabama, 488 U.S. 1020, 109 S. Ct. 821, 102 L. Ed.2d 810 (1989) (Marshall and Brennan, JJ., dissenting).

On October 12, 1989, Petitioner, represented by new counsel, filed a second petition for state post-conviction relief. On February 22, 1990, the trial court dismissed a majority of the claims and ordered an evidentiary hearing on the claims alleging ineffective assistance of counsel and Petitioner's competency to stand trial. On February 22, 1992, the trial court denied Petitioner's request for post-conviction relief.

On appeal, the Alabama Court of Criminal Appeals affirmed the trial court. Neelley v. State, 642 So. 2d 494 (Ala. Crim. App. 1993). On December 16, 1993, the Alabama Supreme Court granted Petitioner's request for certiorari. However, on June 10, 1994, after hearing oral argument, the court quashed the writ as improvidently granted. Ex parte Neelley, 642 So. 2d 510 (Ala. 1994) (Almon and Steagall, JJ., dissenting). Subsequently, on March 6, 1995, the United States Supreme Court denied Petitioner's request for certiorari. 115 S. Ct. 1316, 131 L. Ed.2d 197 (1995).

## CONTENTIONS OF THE PARTIES

The Petitioner requests that this court provide her with a full evidentiary hearing and issue a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Petitioner states the following as grounds for relief:

### I. INEFFECTIVE ASSISTANCE OF COUNSEL

#### A. The Publicity Contract

3

Petitioner contends that a publicity contract[1] entered into with her trial counsel created an actual conflict of interest that adversely affected counsel's representation of her. She alleges that this contract motivated French to sensationalize the trial for personal gain. Specifically, Petitioner contends that this conflict of interest adversely affected French's performance in the following ways: He failed to move for a change of venue; he failed to negotiate a plea bargain or discuss with Petitioner the possibility of a negotiated plea for life imprisonment without parole; he failed to properly investigate and present a defense based on the "battered woman syndrome"; he failed to adequately voir dire prospective jurors; he introduced prejudicial evidence and testimony that increased the sensationalism of the trial; he failed to prepare for or to introduce any mitigating evidence at the sentencing hearings; he had Petitioner testify for three days in graphic and repetitive detail about the murder; and he made improper comments to the press.

The Respondent contends that these claims are barred by 28 U.S.C. § 2254(d), as amended by § 104(3) of Title I of the Anti-Terrorism and Effective Death Penalty Act of 1996 (the Act). Section 104(3)(d) states:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

The Respondent argues that Petitioner's claims were "adjudicated on the merits in State

---

[1] This document, entitled "CONTRACT BETWEEN ROBERT B. FRENCH, JR. AND JUDITH ANN NEELLEY FOR CERTAIN PURPOSES," conveyed to French exclusive rights to any books, motion pictures, television, radio, or other depiction of Petitioner's life.

4

court proceedings," and, as such, are barred by the Act. Moreover, the Respondent argues that

Petitioner has not alleged, nor can she show, that the denial of relief on these claims in the state

court met either of the two listed exceptions to the Act.

Additionally, the Respondent argues that 28 U.S.C. § 2254(e)(1), as amended by § 104(4)

of the Act, forecloses Petitioner's request. Section 104(4)(e)(1) states:

> In a proceeding instituted by an application for a writ of habeas corpus by a person
> in custody pursuant to the judgment of a State court, a determination of a factual
> issue made by a State court shall be presumed to be correct. The applicant shall
> have the burden of rebutting the presumption of correctness by clear and
> convincing evidence.

Respondent contends that the state court made fact findings on these claims that are presumed

correct. Consequently, Respondent argues, Petitioner is not entitled to an evidentiary hearing on

her claims.

Further, the Respondent argues that 28 U.S.C. § 2254(e)(2), as amended by §

104(4)(e)(2) of the Act, forecloses Petitioner's request. Section 104(4)(e)(2) states:

> If the applicant has failed to develop the factual basis of a claim in State court
> proceedings, the court shall not hold an evidentiary hearing on the claim unless the
> applicant shows that--
> (A) the claim relies on--
>      (I) a new rule of constitutional law, made retroactive to cases on collateral
> review by the Supreme Court, that was previously unavailable; or
>      (ii) a factual predicate that could not have been previously discovered
> through the exercise of due diligence; and
> (B) the facts underlying the claim would be sufficient to establish by clear and
> convincing evidence that but for constitutional error, no reasonable factfinder
> would have found the applicant guilty of the underlying offense.

Respondent contends that to the extent Petitioner failed to develop the factual basis for

these claims in the state court proceedings, she is not entitled to any further evidentiary hearing.

Moreover, the Respondent argues, the claim does not meet either of the exceptions listed in the

5

Act.

Finally, the Respondent denies the factual averments made in support of these claims contending that the state court findings constitute the proper factual basis for consideration of these claims.

## B. Per Se Ineffective Assistance of Counsel

Petitioner contends that the unprofessional, unethical, and immoral conduct of her trial counsel established per se ineffective assistance of counsel. She argues that attorney French evidenced such a complete absence of judgment and rationality that her conviction and death sentence should not stand. Petitioner notes, "It has long been the law in Alabama that 'good moral character is a prerequisite for admission' to the practice of law". Morris v. Character & Fitness Appeal Bd. Of the Ala. State Bar, 519 So. 2d 920, 922 (Ala. 1988). Additionally, once granted, membership in the Alabama State Bar is conditioned on an attorney's continued good moral character. See, e.g., Courtney v. Alabama State Bar, 492 So. 2d 1002 (Ala. 1986); Ex parte Montgomery, 244 Ala. 91, 12 So. 2d 314 (1943); Rule 8.4(g), Alabama Rules of Professional Conduct.[2]

As evidence of French's conduct, Petitioner points to French's testimony that he is a mystic, clairvoyant, prophet, and palm reader. She also notes that French allegedly has visions, sees apparitions, and hears voices to which he responds. Petitioner argues that this conduct, in addition to his sexual relationship with Petitioner, falls far below the standard of good moral character and professionalism required of an attorney. She further contends that French attempted to conceal this conduct, after being replaced as counsel, by withholding evidence and

---

[2] Throughout, Petitioner emphasizes the alleged deficiencies of French. There is little mention of Bussman.

6

persuading Petitioner to withhold information from her new attorney. Such conduct, she argues, is tantamount to being represented by an unlicensed attorney, one who fraudulently obtained bar admission, or no attorney at all. See, e.g., Harrison v. United States, 387 F.2d 203 (D.C. Cir. 1967); In re Johnson, 1 Cal. 4th 689, 4 Cal. Rptr. 2d 170, 822 P.2d 1317 (1992); Huckelbury v. State, 337 So. 2d 400 (Fla. Dist. App. 1976); People v. Cox, 12 Ill. 2d 265, 146 N.E.2d 19 (1957). Consequently, Petitioner contends that she was denied effective assistance of counsel required by the Sixth Amendment to the United States Constitution.

Respondent counters that this claim was raised in a three-day evidentiary hearing in Petitioner's second state post-conviction proceeding and was denied on the merits by the trial court and the Alabama Court of Criminal Appeals. Neelley v. State, 642 So. 2d 494 (Ala. Crim. App. 1993). Therefore, 28 U.S.C. § 2254(d), as amended by § 104(3) of the Act, bars habeas relief.

Also, Respondent contends that 28 U.S.C. § 2254(e)(1), as amended by § 104(4) of the Act, forecloses relief. Respondent argues that the state courts made fact findings that are presumed correct. As such, Petitioner is not entitled to any further evidentiary hearing on this claim. Further, to the extent Petitioner failed to develop the factual basis for this claim in the state courts, 28 U.S.C. § 2254(e)(2), as amended by § 104(4) of Title I of the Act, bars a further evidentiary hearing.

Finally, the respondent denies the factual averments made in support of these claims, contending that the state court findings of fact constitute the proper factual basis for consideration of this claim.

### C. Trial Counsel's Alleged Deficient Performance

7

Petitioner contends that her trial counsel's allegedly deficient performance prejudiced her defense and thereby denied her effective assistance of counsel. Specifically, Petitioner alleges that attorney French failed to assist her in the following ways: he failed to adequately investigate, prepare, and present a battered woman syndrome defense; he sexually harassed her; he failed to raise viable claims; and he failed to object to the prosecutor's use of peremptory challenges.

### (1) Failure to present a Battered Woman Defense

Petitioner contends that French knew that she was a victim of spousal abuse. She also contends that French failed to secure copies of Bryce Hospital records that described the abuse and named a witness. Although French entered a plea of "not guilty by reason of insanity" and had Petitioner testify about the abuse, he failed to: have petitioner examined by an independent psychiatrist or psychologist; request funds to hire an independent psychiatrist or psychologist; speak with any of the psychiatrists or staff who examined and treated Petitioner at Bryce Hospital; examine or review Petitioner's medical or psychiatric records from Bryce Hospital; meet with or interview Petitioner's immediate family to corroborate the abusive incidents; consult with professionals regarding Petitioner's mental condition; and retain an expert to testify regarding Petitioner's mental condition.

Petitioner argues that had an expert explained the Battered Woman Syndrome and its effect, a very real probability existed that the jury would have convicted Petitioner of a lesser offense. Further, had the trial judge heard the expert testimony at the time of the sentencing hearing, he would have agreed with the jury's recommendation. Petitioner notes that the Supreme Court has ruled in capital cases that the sentencer must make an individualized decision based on both the circumstances of the offense and the character and propensities of the offender.

8

See Lockett v. Ohio, 438 U.S. 586 (1978); Gregg v. Georgia, 428 U.S. 153 (1976); Woodson v. North Carolina, 428 U.S. 280 (1976). French's failure to prepare and present evidence and testimony regarding the mitigating circumstances, Petitioner argues, deprived her of the opportunity of an individually determined sentence. Petitioner contends that, at a minimum, she should receive a new sentencing hearing. See Harris v. Dugger, 874 F.2d 756 (11th Cir. 1989); Armstrong v. Dugger, 833 F.2d 1430 (11th Cir. 1987); Eutzy v. Dugger, 746 F. Supp. 1492 (N.D. Fla. 1989).

Respondent counters that this claim was raised in a three-day evidentiary hearing in Petitioner's second state post-conviction proceeding and was denied on the merits by the trial court and the Alabama Court of Criminal Appeals. Neelley v. State, 642 So. 2d 494 (Ala. Crim. App. 1993). Therefore, Respondent argues, 28 U.S.C. § 2254(d), as amended by § 104(3) of the Act, bars habeas relief.

Also, Respondent contends that 28 U.S.C. § 2254(e)(1), as amended by § 104(4) of the Act, forecloses relief. Respondent argues that the state courts made fact findings that are presumed correct. As such, Respondent argues, Petitioner is not entitled to any further evidentiary hearing on this claim. Further, to the extent Petitioner failed to develop the factual basis for this claim in the state courts, 28 U.S.C. § 2254(e)(2), as amended by § 104(4) of Title I of the Act, bars a further evidentiary hearing.

Finally, the respondent denies the factual averments made in support of these claims, contending that the state court findings of fact constitute the proper factual basis for consideration of this claim.

### (2) Sexual harassment

9

Petitioner contends that French rendered ineffective assistance of counsel because he sexually harassed her, thereby inhibiting her full cooperation and communication. Thus, she claims, French proceeded to trial without having access to all relevant and pertinent information.

Respondent counters that this claim was raised in a three-day evidentiary hearing in Petitioner's second state post-conviction proceeding and was denied on the merits by the trial court and the Alabama Court of Criminal Appeals. Neelley v. State, 642 So. 2d 494 (Ala. Crim. App. 1993). Therefore, Respondent argues, 28 U.S.C. § 2254(d), as amended by § 104(3) of the Act, bars habeas relief.

Also, Respondent contends that 28 U.S.C. § 2254(e)(1), as amended by § 104(4) of The Act, forecloses relief. Respondent argues that the state courts made fact findings that are presumed correct. As such, Respondent argues, Petitioner is not entitled to any further evidentiary hearing on this claim. Further, Respondent argues, to the extent Petitioner failed to develop the factual basis for this claim in the state courts, 28 U.S.C. § 2254(e)(2), as amended by § 104(4) of Title I of the Act, bars a further evidentiary hearing.

Finally, the respondent denies the factual averments made in support of these claims, contending that the state court findings of fact constitute the proper factual basis for consideration of this claim.

### (3) Failure to raise viable claims

Petitioner contends that French failed to raise viable claims. By order dated February 22, 1990, the trial court dismissed certain claims raised in previous hearings and appeals. Petitioner argues that French's failure to again raise these claims constitutes ineffective assistance of counsel. She further contends that these claims are viable and independently serve as grounds for

10

a new trial and/or sentencing hearing.

Respondent counters that Petitioner has failed to state a valid claim for habeas relief because she has not identified the allegedly viable claims French failed to raise. Alternatively, insofar as Petitioner raises those claims of ineffective assistance of counsel contained in her second state post-conviction proceeding, Respondent counters that this claim was raised in a three-day evidentiary hearing in Petitioner's second state post-conviction proceeding and was denied on the merits by the trial court and the Alabama Court of Criminal Appeals. Neelley v. State, 642 So. 2d 494 (Ala. Crim. App. 1993). Therefore, Respondent argues, 28 U.S.C. § 2254(d), as amended by § 104(3) of The Act, bars habeas relief.

Also, Respondent contends that 28 U.S.C. § 2254(e)(1), as amended by § 104(4) of The Act, forecloses relief. Respondent argues that the state courts made fact findings that are presumed correct. As such, Respondent argues, Petitioner is not entitled to any further evidentiary hearing on this claim. Further, Respondent argues, to the extent Petitioner failed to develop the factual basis for this claim in the state courts, 28 U.S.C. § 2254(e)(2), as amended by § 104(4) of Title I of the Act, bars a further evidentiary hearing.

Finally, the respondent denies the factual averments made in support of these claims, contending that the state court findings of fact constitute the proper factual basis for consideration of this claim.

### (4) Failure to object to the prosecutor's use of peremptory challenges

Petitioner contends that French rendered ineffective assistance because he failed to adequately object to the Prosecutor's use of racially discriminatory peremptory challenges, failed to require the State to establish non-discriminatory reasons for its challenges, and failed to

11

otherwise raise a claim under Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L. Ed.2d 69 (1986).

Respondent counters that Petitioner raised the claim in the second amendment to her second state post-conviction petition and that the trial court refused to allow the amendment because Petitioner raised the claim seven months after the evidentiary hearing. The trial court's ruling was affirmed on appeal. Neelley v. State, 642 So. 2d 494 (Ala. Crim. App. 1993). Therefore, Respondent argues, the claim was procedurally defaulted under state law, and, as such, is barred from federal habeas review. Weeks v. Jones, 26 F.3d 1030, 1043 (11th Cir. 1994); See, e.g., Richardson v. Johnson, 864 F.2d 1536, 1540-42 (11th Cir.), cert. denied, 490 U.S. 1114 (1989); Lindsey v. Smith, 820 F.2d 1137, 1143 (11th Cir. 1987), cert. denied, 489 U.S. 1059 (1989). Respondent also denies the factual averments supporting the claim.

## II. THE TRIAL COURT'S INSTRUCTIONS REGARDING THE BURDEN OF PROOF

Petitioner contends that the trial court improperly shifted the burden of proof to the defense during the guilt phase of her trial in violation of the Fifth, Sixth, Eighth, and Fourteenth amendments to the U.S. Constitution. Specifically, Petitioner argues that the trial court's instruction that "the law presumes that a person intends the natural and probable consequences of his or her acts..." impermissibly shifted the burden of proof to Petitioner. See Francis v. Franklin, 471 U.S. 307 (1985); see also Salmon v. State, 460 So. 2d 334 (Ala. Crim. App. 1984).

Respondent counters that Petitioner did not raise this claim at trial. As such, her failure was a procedural default under state law that bars subsequent federal habeas corpus review. E.g., Engle v. Isacc, 456 U.S. 107 (1982); Wainwright v. Sykes, 433 U.S. 72 (1977); Magwood v. Smith, 791 F.2d 1438, 1444 (11th Cir. 1986). Alabama law precludes collateral review of issues

that could have been, but were not, raised at trial. Rule 32.2(a)(3), Ala.R.Crim.P; Jackson v. State 501 So. 2d 542, 544 (Ala. Crim. App. 1986), cert. denied, 501 So. 2d 542 (Ala. 1987); Dunkins v. State, 489 So. 2d 602, 612 (Ala. Crim. App. 1985), cert. quashed, 489 So. 2d 603 (Ala. 1986). Further, while Alabama has a plain error rule in death sentence cases that permits review of some matters even absent an objection at trial, that rule does not permit collateral review of a claim not addressed as plain error on direct appeal. Rules 39(k) and 45A of the Alabama Rules of Appellate Procedure, Neelley v. State, 642 So. 2d 494, 496 (Ala. Crim. App. 1993), cert. quashed, 642 So. 2d 510 (Ala. 1994), cert. denied, 115 S. Ct.1316 (1995), see, United States v. Frady, 456 U.S. 152, 163-65 (1982); Andrews v. Shulsen, 802 F. 2d 1256, 1262-63 (10th Cir. 1986); see also, Magwood v. Smith, 791 F. 2d at 1444.

Respondent notes that Petitioner did not raise this claim on direct appeal and that this failure was a procedural default under state law that bars federal habeas corpus review of the claim. E.g., Magwood v. Smith, 791 F. 2d at 1244; King v. Strickland, 714 F.2d 1481, 1491-92 (11th Cir. 1983); Douglas v. Wainwright, 714 F.2d 1532, 1547 n.18 (11th Cir. 1983), vacated, 468 U.S. 1208 (1985); Ford v. Strickland, 696 F.2d 804, 824-25 (11th Cir. 1983) (en banc). Alabama law precludes collateral review of issues that could have been but were not raised on direct appeal. Rule 32.2(a)(5), Ala.R.Crim.P.; Magwood v. Smith, 791 F. 2d at 1244; Ex parte Ellison, 410 So. 2d 130, 132 (Ala. 1982); Dunkins v. State, 489 So. 2d 602, 612 (Ala. Crim. App. 1985), cert. quashed, 489 So. 2d 602 (Ala. 1986).

Further, Respondent argues that Petitioner did not raise this claim in her first state post-conviction proceeding and that her failure constitutes a procedural default under state law that bars federal habeas review of the claim. Weeks v. Jones, 26 F.3d 1030, 1043 (11th Cir. 1994);

13

see, e.g., Richardson v. Johnson, 864 F.2d 1536, 1540-42 (11th Cir. 1989), cert. denied, 490 U.S. 1114 (1989); Lindsey v. Smith, 820 F.2d 1137, 1143 (11th Cir. 1987), cert. denied, 489 U.S. 1059 (1989).

Finally, Respondent denies the factual averments made in support of the claim

## III. PETITIONER'S CONVICTION WAS OBTAINED THROUGH ALLEGEDLY INADMISSIBLE EVIDENCE.

Petitioner claims that during the guilt/innocence phase of her trial, the trial court admitted inflammatory, improper, and inadmissible photographs, tape recordings, testimony, and other evidence that prejudiced her case and deprived her of a fundamentally fair trial guaranteed by the Fifth, Sixth, Eighth, and Fourteenth Amendments to the U.S. Constitution. This evidence includes, but is not limited to, the following: (1) testimony of a case worker about the victim's background and family that was introduced solely to inflame the jury's sympathies and emotions; (2) a photograph of the victim taken at some undetermined time prior to the victim's death that was introduced solely to inflame the jury's sympathies and emotions; (3) at least eight different and cumulative photographs of the victim's body; (4) a tape recording from the Rome, Georgia Police Department admitted without anyone testifying or authenticating that the voice on the tape was Petitioner's; and (5) testimony regarding other crimes and attempted crimes that unfairly prejudiced her case.

Respondent counters that Petitioner did not raise this claim at trial, on direct appeal, or in her first state post-conviction proceeding and that these failures constitute procedural defaults under state law that bar subsequent federal habeas corpus review. Also, Respondent denies the factual averments made in support of this claim.

14

## IV. THE ADMISSION OF PETITIONER'S CONFESSION

During the guilt phase of Petitioner's trial, the court admitted her confession made to authorities in Murfreesboro, Tennessee, and Fort Payne, Alabama. Petitioner contends that these statements were induced by promises of benefit in violation of her Fifth, Sixth, Eighth, and Fourteenth Amendment rights. See Leon v. Wainwright, 734 F2d 770 (11th Cir. 1984). Additionally, she claims, the authorities failed to inform her that an attorney was present and waiting to speak with her. Petitioner argues that had she known that her attorney was waiting, she would not have given her purported consent to the continued interrogation that ultimately produced her confessions.

Respondent counters that this claim was raised at trial and was denied on the merits by the trial court and the Alabama Supreme Court, Ex parte Neelley, 494 So. 2d at 698-99, and that 28 U.S.C. § 2254(d), as amended by § 104(3) of the Act, bars habeas relief.

Also, Respondent contends that 28 U.S.C. § 2254(e)(1), as amended by § 104(4) of the Act, forecloses relief. Respondent argues that the state courts made fact findings that are presumed correct and that Petitioner is not entitled to any further evidentiary hearing on this claim. Moreover, Respondent argues, to the extent Petitioner failed to develop the factual basis for this claim in the state courts, 28 U.S.C. § 2254(e)(2), as amended by § 104(4) of Title I of the Act, bars a further evidentiary hearing.

Finally, the respondent denies the factual averments made in support of these claims, contending that the state court findings of fact constitute the proper factual basis for consideration of this claim.

## V. PETITIONER'S CONFESSION AND MENTAL STATE

15

Petitioner claims that, at the time of her arrest and interrogation, she suffered from a psychological and emotional impairment, due to her husband's physical and emotional abuse. As a result, she had diminished mental capacity. Petitioner further contends that she was mentally ill at the time of her arrest and did not adequately understand that nature of her Miranda rights. Consequently, she claims, she did not knowingly and intelligently waive her Miranda rights prior to making statements to law enforcement officials. See Miller v. Dugger, 838 F.2d 1530 (11th Cir. 1988).

Respondent counters that this claim was raised at trial and was denied on the merits by the trial court and the Alabama Supreme Court, Ex parte Neelley, 494 So. 2d at 699-704, and that 28 U.S.C. § 2254(d), as amended by § 104(3) of the Act, bars habeas relief.

Also, Respondent contends that 28 U.S.C. § 2254(e)(1), as amended by § 104(4) of The Act, forecloses relief. Respondent argues that the state courts made fact findings that are presumed correct and that Petitioner is not entitled to any further evidentiary hearing on this claim. Further, to the extent Petitioner failed to develop the factual basis for this claim in the state courts, 28 U.S.C. § 2254(e)(2), as amended by § 104(4) of Title I of the Act, bars a further evidentiary hearing.

Finally, the respondent denies the factual averments made in support of this claim, contending that the state court findings of fact constitute the proper factual basis for consideration of this claim.

## VI. THE TRIAL COURT'S DECISION NOT TO HOLD A COMPETENCY HEARING

Petitioner contends that the trial court possessed evidence requiring a hearing on Petitioner's competency to stand trial and that this evidence suggested that Petitioner was unable

16

to consult with her trial counsel with a reasonable degree of rational understanding during trial. Further, that the evidence included a request by Petitioner's former counsel that she be committed to Bryce Hospital for a psychiatric examination, the conclusion of the State Lunacy Commission that she suffered from a "Dependent Personality Disorder", and her own testimony that she did not confide in her former counsel about the frequency or severity of her husband's abuse. Consequently, Petitioner argues, her Fifth, Sixth, Eighth, and Fourteenth Amendment rights were violated. See, Pate v. Robinson, 383 U.S. 375 (1966).

Respondent counters that Petitioner raised this claim in her second state post-conviction proceeding and that the state trial court set that claim for an evidentiary hearing but Petitioner failed to present any evidence to support her claim. Further, that Petitioner abandoned this claim when she did not raise it on her appeal from the denial of her second state post-conviction petition. Petitioner's failure to present evidence and to raise this claim on appeal constitutes a procedural default that bars subsequent federal habeas review. Rule 32.2(b) of the Alabama Rules of Criminal Procedure; Hill v. Jones, No. 94-6793 (11th Cir. April 9, 1996) slip op. at 1743, 1752-53; see Coleman v. Thompson, 501 U.S. 722, 111 S. Ct. 2546, 115 L. Ed.2d 640 (1991). Respondent also argues that Petitioner's failure to raise this claim on appeal from the denial of relief on her second state post-conviction petition constitutes a procedural default that bars subsequent federal habeas review. Waldrop v. Jones, 77 F.3d 1308, 1318 (11th Cir. 1996).

Further, to the extent Petitioner failed to develop the factual basis for this claim in the state courts, 28 U.S.C. § 2254(e)(2), as amended by § 104(4) of Title I of the Act, bars a further evidentiary hearing. Finally, the respondent denies the factual averments made in support of these claims, contending that the state court findings of fact constitute the proper factual basis for

17

consideration of this claim.

## VII. THE TRIAL COURT'S APPLICATION OF THE "ESPECIALLY HEINOUS, ATROCIOUS OR CRUEL" AGGRAVATING CIRCUMSTANCES TEST

Petitioner contends that the "especially heinous, atrocious or cruel" aggravating

circumstances test is unconstitutionally vague, over broad, and was arbitrarily applied in violation

of the Fifth, Sixth, Eighth, and Fourteenth Amendments to the United States Constitution.

Specifically, Petitioner states that her Sixth and Fourteenth Amendment rights to a fair trial and

her Eighth Amendment right against arbitrary application of the death penalty and imposition of

cruel and unusual punishment were violated. See Maynard v. Cartwright, 486 U.S. 356, 108

S.Ct. 1853, 100 L. Ed.2d 372 (1988). Also, she claims that Alabama's application of the test is

unconstitutionally vague and applied in an overbroad and arbitrary manner because there are no

adequate guidelines for jurors and judges to apply.

Respondent counters that Petitioner did not raise this claim at trial, on direct appeal, or in

her first state post-conviction proceeding and that these failures constitute procedural defaults

under state law that bar subsequent federal habeas corpus review. Also, Respondent denies the

factual averments made in support of this claim.

## VIII. THE TRIAL COURT'S USE OF AN ELEMENT OF THE CAPITAL OFFENSE AS AN AGGRAVATING CIRCUMSTANCE

Petitioner contends that after the jury found her guilty of murder while engaged in a

kidnaping, the trial court applied the aggravating circumstance that the underlying offense was

committed while engaged in a kidnaping. She argues that application of this aggravating

circumstance was improper because an element of a capital offense cannot also be used as an

aggravating factor for imposing death. Ashlock v. State, 367 So. 2d 560 (Ala. Crim. App. 1978).

18

Petitioner also claims that there was insufficient evidence that she engaged in or that a kidnaping occurred. She further notes that during a sentencing hearing, the State bears the burden of proving, beyond a reasonable doubt, the existence of all aggravating factors. ALA. CODE § 13A-5-45(e); Sullivan v. Louisiana, 508 U.S. 275, 113 S. Ct. 2078, 124 L. Ed.2d 182 (1993).; In re Winship, 397 U.S. 358, 90 S. Ct. 1068, 25 L. Ed.2d 368 (1978).

Respondent counters that Petitioner did not raise this claim at trial, on direct appeal, or in her first state post-conviction proceeding and that these failures constitute procedural defaults under state law that bar subsequent federal habeas corpus review. Also, Respondent denies the factual averments made in support of this claim.

## IX. THE PROSECUTION'S ALLEGED FAILURE TO DISCLOSE FAVORABLE AND MATERIAL EVIDENCE ON THE QUESTIONS OF GUILT AND PUNISHMENT

Petitioner contends that the State withheld favorable and material evidence on her guilt and punishment in violation of her Fifth, Sixth, Eighth, and Fourteenth Amendment rights. Specifically, she claims that the State withheld exculpatory evidence concerning Petitioner's husband's involvement in the underlying offenses, Petitioner's involvement in the underlying offenses, and the relationship between Petitioner and her husband. She argues that by failing to disclose this evidence, the prosecution violated Petitioner's Constitutional rights. Brady v. Maryland, 373 U.S. 83 (1963).

Respondent counters that this claim was raised in Petitioner's first state post-conviction proceeding and was denied on the merits by the trial court. Therefore, 28 U.S.C. § 2254(d), as amended by § 104(3) of the Act, bars habeas relief.

Also, Respondent contends that 28 U.S.C. § 2254(e)(1), as amended by § 104(4) of the

19

Act, forecloses relief. Respondent argues that the state courts made fact findings that are presumed correct and that Petitioner is not entitled to any further evidentiary hearing on this claim. Further, to the extent Petitioner failed to develop the factual basis for this claim in the state courts, 28 U.S.C. § 2254(e)(2), as amended by § 104(4) of Title I of the Act, bars a further evidentiary hearing.

Finally, the respondent denies the factual averments made in support of these claims, contending that the state court findings of fact constitute the proper factual basis for consideration of this claim.

## X. JURY INCLUSION

Petitioner contends that she was denied her right to an impartial jury because of improper jury inclusion in violation of the Fifth, Sixth, Eighth, and Fourteenth Amendments to the United States Constitution and the laws and Constitution of the State of Alabama. She alleges that certain jury members made prejudicial statements that violated her right to due process and to a fair and impartial jury.

Respondent counters that Petitioner did not raise this claim at trial, on direct appeal, or in her first state post-conviction proceeding and that these failures constitute procedural defaults under state law that bar subsequent federal habeas corpus review. Also, Respondent denies the factual averments made in support of this claim.

## XI. THE INCLUSION OF A JUROR WITH PENDING CHARGES AGAINST HER BROUGHT BY THE SAME DISTRICT ATTORNEY PRESENTING PETITIONER'S CASE

Petitioner contends that she was denied her rights to an impartial jury because a juror had charges pending against her and was being prosecuted by the same district attorney presenting

20

Petitioner's case. Further, Petitioner contends that this juror falsely responded to Petitioner's voir dire questions about prior or pending involvement with the prosecutor. As a result, she contends, her Fifth, Sixth, Eighth, and Fourteenth Amendment rights were violated.

Respondent counters that this claim was raised in Petitioner's motion for a new trial and denied on the merits by the state trial court and the Alabama Court of Criminal Appeals, Neelley v. State, 642 So. 2d at 679-80, 685-87, and that 28 U.S.C. § 2254(d), as amended by § 104(3) of the Act, bars habeas relief.

Also, Respondent contends that 28 U.S.C. § 2254(e)(1), as amended by § 104(4) of the Act, forecloses relief. Respondent argues that the state courts made fact findings that are presumed correct and that Petitioner is not entitled to any further evidentiary hearing on this claim. Further, to the extent Petitioner failed to develop the factual basis for this claim in the state courts, 28 U.S.C. § 2254(e)(2), as amended by § 104(4) of Title I of the Act, bars a further evidentiary hearing.

Finally, Respondent denies the factual averments made in support of these claims, contending that the state court findings of fact constitute the proper factual basis for consideration of this claim.

## XII. THE VENIRE EXCLUSION OF PERSONS OPPOSED TO CAPITAL PUNISHMENT

Petitioner contends that she was denied her right to an impartial and representative jury by the venire exclusion of persons opposed to capital punishment in violation of her Fifth, Sixth, Eighth, and Fourteenth Amendment rights. Witherspoon v. Illinois, 391 U.S. 510 (1968). She notes that a jury's proposed sentence is advisory in Alabama capital cases and that empirical

21

evidence demonstrates that "death-qualified" juries have a substantially higher propensity to convict than "non-death"-qualified juries.

Respondent counters that Petitioner raised this claim on direct appeal to the Alabama Supreme Court and that it was denied on the merits. Ex parte Neelley, 494 So. 2d at 704-05. Further, the Alabama Court of Criminal Appeals previously held that there was no error in the excusal for cause of jurors opposed to capital punishment because the jury recommended a sentence of life without parole, Neelley v. State, 494 So. 2d at 680, and that 28 U.S.C. § 2254(d), as amended by § 104(3) of the Act, bars habeas relief.

Also, Respondent contends that 28 U.S.C. § 2254(e)(1), as amended by § 104(4) of the Act, forecloses relief. Respondent argues that the state courts made fact findings that are presumed correct and that Petitioner is not entitled to any further evidentiary hearing on this claim. Further, to the extent Petitioner failed to develop the factual basis for this claim in the state courts, 28 U.S.C. § 2254(e)(2), as amended by § 104(4) of Title I of the Act, bars a further evidentiary hearing.

Finally, Respondent denies the factual averments supporting this claim.

## XIII. PROSECUTORIAL MISCONDUCT

Petitioner contends that prosecutorial misconduct throughout the trial rendered the proceedings fundamentally unfair in violation of her Fifth, Sixth, Eighth, and Fourteenth Amendment rights. Petitioner states that the prosecutor's misconduct included: describing the victim's disadvantaged background and childhood; failing to disclose pending charges against the jury foreman; failing to disclose to Petitioner favorable and material evidence on the question of her guilt; making improper statements in his closing argument; improperly commenting on

22

Petitioner's former counsel; and seeking the death penalty based upon the victim's personal characteristics.

Respondent counters that, insofar as Petitioner re-asserts her contentions that a jury member was improperly included and that exculpatory evidence was withheld, these claims were adjudicated on the merits in state court and that 28 U.S.C. § 2254(d), as amended by § 104(3) of the Act, bars habeas relief.

Also, Respondent contends that 28 U.S.C. § 2254(e)(1), as amended by § 104(4) of the Act, forecloses relief. Respondent argues that the state courts made fact findings that are presumed correct and that Petitioner is not entitled to any further evidentiary hearing on this claim. Further, to the extent Petitioner failed to develop the factual basis for this claim in the state courts, 28 U.S.C. § 2254(e)(2), as amended by § 104(4) of Title I of the Act, bars a further evidentiary hearing.

Moreover, Respondent denies the factual averments made in support of these claims, contending that the state court findings of fact constitute the proper factual basis for consideration of this claim.

Insofar as Petitioner claims that references to the victim in opening statement was improper, and that the prosecutor sought a death sentence based on the personal characteristics of the victim, Respondent states that Petitioner did not raise this claim at trial, on direct appeal, or in her first state post-conviction proceeding and that these failures constitute procedural defaults under state law that bar subsequent federal habeas corpus review. Also, Respondent denies the factual averments made in support of this claim.

### XIV. THE TRIAL SITUS OF DEKALB COUNTY, ALABAMA

23

Petitioner contends that she was denied a fair trial in DeKalb County, Alabama in violation of her Fifth, Sixth, Eighth, and Fourteenth Amendment rights. She claims that a fair trial was impossible because of the public attention, the extensive press coverage, and the number and conduct of spectators in the courtroom.

Respondent counters that insofar as this claim is based on the allegation that the trial court failed to adequately control the courtroom audience, it was raised in Petitioner's motion for a new trial and denied on the merits by the state trial court and that 28 U.S.C. § 2254(d), as amended by § 104(3) of the Act, bars habeas relief.

Also, Respondent contends that 28 U.S.C. § 2254(e)(1), as amended by § 104(4) of the Act, forecloses relief. Respondent argues that the state courts made fact findings that are presumed correct and that Petitioner is not entitled to any further evidentiary hearing on this claim. Further, to the extent Petitioner failed to develop the factual basis for this claim in the state courts, 28 U.S.C. § 2254(e)(2), as amended by § 104(4) of Title I of the Act, bars a further evidentiary hearing.

Further, Respondent denies the factual averments made in support of these claims, contending that the state court findings of fact constitute the proper factual basis for consideration of this claim.

Insofar as Petitioner's claim is based on the remaining allegations, Respondent states that Petitioner did not raise this claim at trial, on direct appeal, or in her first state post-conviction proceeding and that these failures constitute procedural defaults under state law that bar subsequent federal habeas corpus review. Also, Respondent denies the factual averments made in support of this claim.

24

## XV. INDIVIDUAL VOIR DIRE

Petitioner contends that, in light of the pretrial publicity, the trial court's refusal to permit individual voir dire violated Petitioner's Fifth, Sixth, Eighth, and Fourteenth Amendment rights. Because voir dire was conducted in groups, Petitioner claims that she "was forced to choose between possibly infecting the entire panel with a prejudicial answer to searching questions regarding venire members' knowledge of the case or remaining ignorant of the venire members' very likely knowledge and prejudice regarding the case."

Respondent states that Petitioner did not raise this claim at trial, on direct appeal, or in her first state post-conviction proceeding and that these failures constitute procedural defaults under state law that bar subsequent federal habeas corpus review. Also, Respondent denies the factual averments made in support of this claim.

## XVI. THE TRIAL COURT OVERRIDE OF THE JURY'S SENTENCE RECOMMENDATION

Petitioner contends that the trial court override of the jury's life sentence recommendation violated her Fifth, Sixth, Eighth, and Fourteenth Amendment rights. Petitioner claims that factual issues remained in dispute, and, as such, the trial court's decision deprived her of the right to have a jury engage in conclusive fact finding regarding the elements of the offense and existence of mitigating and aggravating circumstances. Additionally, she notes, the evolving standards of decency under the Eighth and Fourteenth Amendments to the U.S. Constitution bar the standardless override of a carefully deliberated jury verdict for life imprisonment. Moreover, Petitioner argues, the decision was an arbitrary imposition of the death penalty that violated Petitioner's rights to due process. See Woodson v. North Carolina, 428 U.S. 280 (1976); Penry

25

v. Lynaugh, 492 U.S. 302, 109 S. Ct. 2934, 106 L. Ed.2d 256 (1989); Stanford v. Kentucky, 492 U.S. 361, 109 S. Ct. 2969, 106 L. Ed.2d 306 (1989).

Respondent states that Petitioner did not raise this claim at trial, on direct appeal, or in her first state post-conviction proceeding. These failures constitute procedural defaults under state law that bar subsequent federal habeas corpus review. Also, Respondent denies the factual averments made in support of this claim.

## XVII. PROSECUTION PEREMPTORY STRIKES - RACE[3]

Petitioner contends that the prosecutor's use of racially discriminatory peremptory challenges denied her a fair trial by an impartial jury made up of a fair cross-section of the community in violation of her Eighth and Fourteenth Amendment and federal statutory rights. Powers v. Ohio, 499 U.S. 400, 111 S. Ct. 1364, 113 L. Ed.2d 411 (1991); Batson v. Kentucky, 476 U.S. 79, 106 S. Ct. 1712, 90 L. Ed.2d 69 (1986); 18 U.S.C. § 243 (1985). Petitioner notes that Batson v. Kentucky was decided on April 30, 1986, prior to the dates on which the Supreme Court of Alabama released its decision and the United States Supreme Court denied certiorari on her original appeal. Consequently, she claims, Batson and its progeny are retroactively applicable to her case. Griffith v. Kentucky, 479 U.S. 314, 107 S. Ct. 708, 93 L. Ed.2d 649 (1987).

Respondent states that Petitioner did not raise this claim at trial, on direct appeal, or in her first state post-conviction proceeding and that these failures constitute procedural defaults under state law that bar subsequent federal habeas corpus review. Also, Respondent denies the factual averments made in support of this claim.

Respondent further counters that Petitioner raised the claim in the second amendment to

---

[3] This claim is listed as "XIV" in Petitioner's first amendment to the petition.

her second state post-conviction petition and that the trial court refused to allow the amendment because Petitioner raised the claim seven months after the evidentiary hearing. The trial court's ruling was affirmed on appeal. Neelley v. State, 642 So. 2d 494 (Ala. Crim. App. 1993). Therefore, Respondent argues, the claim was procedurally defaulted under state law, and, as such, is barred from federal habeas review. Weeks v. Jones, 26 F.3d 1030, 1043 (11th Cir. 1994); See, e.g., Richardson v. Johnson, 864 F.2d 1536, 1540-42 (11th Cir.), cert. denied, 490 U.S. 1114 (1989); Lindsey v. Smith, 820 F.2d 1137, 1143 (11th Cir. 1987), cert. denied, 489 U.S. 1059 (1989).

Alternatively, Respondent argues, Petitioner's conviction became final on March 9, 1987 when the United States Supreme Court denied her petition for writ of certiorari on direct appeal. Neelley v. Alabama, 480 U.S. at 926, 107 S. Ct. at 1389. Respondent argues that Neelley, who is white, must base her claim on Powers v. Ohio, 499 U.S. 400 (1991), which was decided after her conviction became final and that this claim is not available to her because that decision is not retroactively applicable to her case. Teague v. Lane, 489 U.S. 288, 109 S. Ct. 1060, 103 L. Ed.2d 334 (1989); Farrell v. Davis, 3 F.3d 370, 372 (11th Cir. 1993).

Furthermore, Respondent argues, Petitioner fails to state a claim for relief because she failed to plead any facts supporting this claim and that a habeas petitioner is not entitled to relief on conclusory and speculative claims. See, Raulerson v. Wainwright, 753 F.2d 869, 876 (11th Cir. 1985). Finally, Respondent denies the averments made in support of this claim.

## XVIII. PROSECUTION PEREMPTORY STRIKES - GENDER

Petitioner contends that the prosecutor's use of gender discriminatory peremptory challenges denied her a fair trial by an impartial jury made up of a fair cross-section of the

27

community in violation of her Eighth and Fourteenth Amendment rights. J.E.B. v. Alabama, 511

U.S. 127, 114 S. Ct. 1419, 128 L. Ed.2d 89 (1994); Batson v. Kentucky, 476 U.S. 79 (1986).

Respondent states that Petitioner did not raise this claim at trial, on direct appeal, or in her

first state post-conviction proceeding and that these failures constitute procedural defaults under

state law that bar subsequent federal habeas corpus review. Also, Respondent denies the factual

averments made in support of this claim.

Respondent further counters that Petitioner raised the claim in the second amendment to

her second state post-conviction petition and that the trial court refused to allow the amendment

as untimely because Petitioner raised the claim seven months after the evidentiary hearing. The

trial court's ruling was affirmed on appeal. Neelley v. State, 642 So. 2d 494 (Ala. Crim. App.

1993). Therefore, Respondent argues, the claim was procedurally defaulted under state law, and,

as such, is barred from federal habeas review. Weeks v. Jones, 26 F.3d 1030, 1043 (11th Cir.

1994); See, e.g., Richardson v. Johnson, 864 F.2d 1536, 1540-42 (11th Cir.), cert. denied, 490

U.S. 1114 (1989); Lindsey v. Smith, 820 F.2d 1137, 1143 (11th Cir. 1987), cert. denied, 489

U.S. 1059 (1989).

Alternatively, Respondent argues, Petitioner's conviction became final on March 9, 1987

when the United States Supreme Court denied her petition for writ of certiorari on direct appeal.

Neelley v. Alabama, 480 U.S. at 926, 107 S. Ct. at 1389. Further, Petitioner bases her claim on

J.E.B. v. Alabama, 511 U.S. 127 (1994), which was decided after her conviction became final and

that this claim is not available to her because that decision is not retroactively applicable to her

case. Teague v. Lane, 489 U.S. 288, 109 S. Ct. 1060, 103 L. Ed.2d 334 (1989); see, Farrell v.

Davis, 3 F.3d 370, 372 (11th Cir. 1993).

Furthermore, Respondent argues, Petitioner fails to state a claim for relief because she failed to plead any facts supporting this claim and has merely stated conclusions and that a habeas petitioner is not entitled to relief on conclusory and speculative claims. See, Raulerson v. Wainwright, 753 F.2d 869, 876 (11th Cir. 1985). Finally, Respondent denies the factual averments made in support of this claim.

## XIX. THE TRIAL COURT'S "REASONABLE DOUBT" INSTRUCTION

Petitioner contends that the trial court impermissibly instructed the jury during the guilt phase of her trial as to the meaning of "reasonable doubt" in violation of her Fifth, Sixth, Eighth, and Fourteenth Amendment rights. She argues that the instruction given suggested a higher degree of doubt than is required for acquittal under the reasonable doubt standard guaranteed by the Fourteenth Amendment Due Process clause. In re Winship, 397 U.S. 358, 364, 90 S. Ct. 1068, 25 L. Ed.2d 368 (1970). Cage v. Louisiana, 498 U.S. 39, 111 S. Ct. 328, 112 L. Ed.2d 339 (1990).

Respondent states that Petitioner did not raise this claim at trial, on direct appeal, or in her first state post-conviction proceeding and that these failures constitute procedural defaults under state law that bar subsequent federal habeas corpus review. Also, Respondent denies the factual averments made in support of this claim.

Respondent further argues that Petitioner raised the claim in the second amendment to her second state post-conviction petition and that the trial court refused to allow the amendment because Petitioner raised the claim seven months after the evidentiary hearing. The trial court's ruling was affirmed on appeal. Neelley v. State, 642 So. 2d 494 (Ala. Crim. App. 1993). Therefore, Respondent argues, the claim was procedurally defaulted under state law, and, as such,

29

is barred from federal habeas review. Weeks v. Jones, 26 F.3d 1030, 1043 (11th Cir. 1994); See, e.g., Richardson v. Johnson, 864 F.2d 1536, 1540-42 (11th Cir.), cert. denied, 490 U.S. 1114 (1989); Lindsey v. Smith, 820 F.2d 1137, 1143 (11th Cir. 1987), cert. denied, 489 U.S. 1059 (1989). Further, Respondent denies the averments made supporting the claim.

## XX. ALABAMA'S COMPENSATION SYSTEM FOR ATTORNEYS APPOINTED IN CAPITAL PUNISHMENT CASES

Petitioner contends that Alabama's system for compensating attorneys appointed in capital cases denied her the effective assistance of counsel in violation of her Fifth, Sixth, Eighth, and Fourteenth Amendment rights. She notes that appointed attorneys are limited to a maximum fee of $1,000 for all out-of-court work at the trial stage, $1,000 on appeal, and $600 for post-conviction proceedings. ALA. CODE §§ 15-12-21(d), 15-12-22(d), 15-12-23(d) (1975). These statutory limitations, she argues, discourage the representation of indigent capital defendants and effectively reduce the quality of legal representation. See, e.g., DeLisio v. Alaska Superior Court, 740 P.2d 437 (Alaska 1987); Makemson v. Martin County, 491 So. 2d 1109 (Fla. 1986), cert. denied, 479 U.S. 1043 (1987); State ex rel. Stephan v. Smith, 242 Kan. 336, 747 P.2d 816 (1987); Wilson v. Mississippi, 574 So. 2d 1338 (Miss. 1990); State v. Lynch, 796 P.2d 1150 (Okl. 1990).

Respondent states that Petitioner did not raise this claim at trial, on direct appeal, or in her first state post-conviction proceeding and that these failures constitute procedural defaults under state law that bar subsequent federal habeas corpus review. Also, Respondent denies the factual averments made in support of this claim.

Furthermore, Respondent argues that Petitioner fails to state a claim for relief because she

failed to plead any facts supporting this claim and that a habeas petitioner is not entitled to relief

on conclusory and speculative claims.  See, Raulerson v. Wainwright, 753 F.2d 869, 876 (11th

Cir. 1985).  Finally, Respondent denies the averments made in support of this claim.

## ANALYSIS

A threshold issue applicable in this § 2254 petition is the appropriate standard of review to

be employed by this court.  Importantly, Neelley's § 2254 petition was filed on May 29, 1996.  On

April 24, 1996, President Clinton signed into law significant habeas corpus amendments (Pub. L.

No. 104-132, 110 Stat. 1214) that were enacted as Title I of the Anti-Terrorism and Effective

Death Penalty Act of 1996 ("the Act").  The amendments affect 28 U.S.C. § 2244, 2253, 2254,

2255, Appellate Rule 22, and 21 U.S.C. § 848(q) and they create a new Chapter 154, codified at

28 U.S.C. § 2261-2266, containing special provisions for capital cases.  The respondents contend

that Neelley's claims are barred by 28 U.S.C. § 2254(d), as amended by § 104(3) of the Act.  As

noted above, § 104(3)(d) states:

> An application for a writ of habeas corpus on behalf of a person in custody
> pursuant to the judgment of a State Court shall not be granted with respect to any
> claim that was adjudicated on the merits in State Court proceedings unless the
> adjudication of the claim --
>
>> (1) resulted in a decision that was contrary to, or involved an
>> unreasonable application of, clearly established Federal law, as
>> determined by the Supreme Court of the United States; or
>>
>> (2) resulted in a decision that was based on an unreasonable
>> determination of the facts in light of the evidence presented in the
>> State court proceeding.

The respondent argues that petitioner's claims were "adjudicated on the merits in State

31

court proceedings," and as such are barred by the Act. Moreover, the respondents argue that the

petitioner has not alleged, nor can she show, that the denial of relief on these claims in state court

meets either of the two (2) exceptions listed in the Act.

    Additionally, the respondents argue that 28 U.S.C. § 2254(e)(1), as amended by § 104(4)

of the Act, forecloses petitioner's request. Section 104(4)(e)(1) states:

> In a proceeding instituted by an application for writ of habeas corpus by a person
> in custody pursuant to the judgment of a State court, a determination of a factual
> issue made by a State Court shall be presumed to be correct. The applicant shall
> have the burden of rebutting the presumption of correctness by clear and
> convincing evidence.

    Respondent contends that the state court made fact findings on these claims that are

presumed to be correct. Consequently, respondents argue, petitioner is not entitled to additional

evidentiary proceedings to develop her claims. Further, the respondents argue that 28 U.S.C. §

2254(e)(2), as amended by § 104(4)(e)(2) of the Act, foreclosed the petitioner's request. Section

104(e)(2) states:

> If the applicant has failed to develop the factual basis of a claim in State court
> proceedings, the court shall not hold an evidentiary hearing on the claim unless the
> applicant shows that --
>
> (A) The claim relies on --
>
> > (i) a new rule of constitutional law, made retroactive to cases on
> > collateral review by the Supreme Court, that was previously
> > unavailable; or
> >
> > (ii) a factual predicate that could not have been previously
> > discovered through the exercise of due diligence; and
>
> (B) the facts underlying the claim would be sufficient to establish by clear and
> convincing evidence that but for constitutional error, no reasonable fact finder
> would have found the applicant guilty of the underlying offense.

The petitioner contends that the April 1996 amendments to § 2254 do not apply to her petition although the application for habeas corpus relief was unquestionably filed after the President signed the Anti-Terrorism and Effective Death Penalty Act of 1996. Neelley contends that the Act, as amended, is inapplicable to her petition for three (3) reasons. First, she argues that the Act was enacted and signed into law after she had exhausted her state appeals. Neelley contends that it would be fundamentally unfair, and an unconstitutional *ex post facto* application of law to apply the Act to her claims. For this dubious proposition, she cites Remeta v. Singletary, 85 F.3d 513, 515 (11th Cir. 1996); Montgomery v. Meloy, 86 F.3d 1158 (7th Cir. 1996); and United States ex rel. Dabbs v. Page, No. 96-C-2339, 1996 WL 467237 (N.D. Ill., August 13, 1996). Second, Neelley argues that the provisions of the Act, as amended, are applicable only in the event a state "opts in" by "creating a mechanism for the appointment and funding of competent counsel to represent the State's death-sentenced prisoners in their post-conviction habeas proceedings." Citing Hill v. Butterworth, 941 F. Supp. 1129 (N.D. Fla. 1996). Finally, Neelley argues that the resolution of her petition for extraordinary relief in the State of Alabama is "directly contrary to, or involved an unreasonable application of, clearly established federal law . . . or that the State Court's conclusion that her trial counsel did not suffer from an actual conflict of interest is based on . . . an unreasonable interpretation of facts in light of the evidence presented in the State Court proceeding."

The United States Constitution prohibits *ex post facto* laws. See Article I, Section 9, Cl. 3; Article II, Section 10, Cl.1. The amendments to § 2254 do not "make an action done before the passing of the law, and which [] innocent when done, criminal; and punishes such action." Calder v. Bull, 3 Dall. 386 (1798). The § 2254 amendments merely establish the statutory

33

framework for the analysis of the substantive constitutional rights implicated in a petition for writ of habeas corpus. The United States Supreme Court utilized a three-part test to aid a court in deciding whether "a federal statute enacted after the events in suit" applies to an existing case. Landgraf v. USI Film Prod., 511 U.S. 244, 280, 114 S.Ct. 1483, 1505, 128 L. Ed.2d 229 (1994). Under Landgraf, "the court's first task is to determine whether Congress has expressly prescribed the statute's proper reach." Id. Where Congress has made its intent clear, it governs. Kaiser Aluminum and Chem. Corp. v. Bonjorno, 494 U.S. 827, 837, 110 S. Ct. 1570, 1576-77, 108 L. Ed.2d 842 (1990). "When, however, the statute contains no such express command, the court must determine whether the new statute would have retroactive effect." Landgraf, 511 U.S. at 280, 114 S. Ct. at 1505. If the court decides that the statute would operate retroactively, absent clear congressional intent to the contrary, the newly enacted statute should not be applied to the pending case. As part of the statutory scheme at issue here, Congress expressly stated in Section 107(c) of the Act that the new "[c]hapter 154 . . . shall apply to cases pending on or after the date of enactment of this act." No similar language appears in regards to the amendments to 28 U.S.C. § 2244, 2253, and 2254.

A newly enacted statute will be deemed to have "retroactive effect" if it would "impair rights a party possessed when he acted, increase a party's liability for past conduct, or impose new duties with respect to transactions already completed." Id. Thus, if the new law is found to "affect vested rights and past transactions," id. at 268-69, 114 S. Ct. at 1499, the court must presume that the new statute does not apply to pending cases. Id. at 269-70, 114 S. Ct. at 1499-1501. When a new law, however, consists of "prospective relief" legislation, a court should "'apply the law in effect at the time it renders its decision' . . . even though that law was enacted

34

after the events that gave rise to the suit." Id. at 273, 114 S. Ct. at 1501. A party to a pending case has no vested right to a statutory scheme that defines the scope of the party's prospective relief or the court's jurisdiction. Id. at 285, n. 37, 114 S. Ct. at 1501-02, 1507 n. 37. The statutes delineating the scope of a state prisoner's habeas corpus action are of the "prospective-relief" type. The remedial nature of the writ of habeas corpus is well established. See Peyton v. Rowe, 391 U.S. 54, 65, 88 S. Ct. 1549, 1555, 20 L. Ed.2d 426 (1968). A change in the scope of the writ of habeas corpus "speak[s] to the power of the court rather than the rights or obligations of the parties." Landgraf, 511 U.S. at 274, 114 S. Ct. at 1502. There does not appear to be a common law doctrine that creates in a state prisoner a vested right to habeas corpus review under the laws governing the writ's application at the time of trial and sentencing. "Without a statutory or common law right at stake, a newly enacted statute is not deemed to 'operate "retrospectively" merely because it is applied in the case arising from conduct antedating the statute's enactment, or upsets expectations based in prior law.'" See Leavitt v. Arave, 927 F. Supp. 394, 399 (D. Idaho 1996). In Felker v. Turpin, 83 F.3d 1303, 1304-07, 1310-11 (11th Cir. 1996), the Eleventh Circuit applied the amended version of 28 U.S.C. § 2244(b), in denying a petitioner's request to file a successive petition. This application of the April 26, 1996, amendments was implicitly approved by the United States Supreme Court in Felker v. Turpin, ____ U.S. ____, 116 S. Ct. 2333, 135 L. Ed.2d 827 (1996).

Neelley's second argument is that the amendments to § 2254 are applicable only when a state has affirmatively opted into the appointment of counsel provisions as modified in 28 U.S.C. § 2261. If a state opts into the new habeas provisions, it receives several procedural benefits. First, petitions for habeas relief under § 2254 must be filed in federal court within 180 days "after

35

final State court affirmance of the conviction and sentence on direct review or the expiration of time for seeking such review." 28 U.S.C. § 2263(a). Second, federal district courts are limited to considering "a claim or claims that have been raised and decided on the merits in state courts." 28 U.S.C. § 2264(a). Third, adjudication of a petition subject to Chapter 154 must be given priority by the district court and in the courts of appeal "over all non capital matters." 28 U.S.C. § 2266(a). Fourth, reviewing courts are forced to expedite their reviews with habeas petitions brought under Chapter 154. District courts must render a final judgment on a habeas petition within 180 days after the petition is filed, allowing the parties at least 120 of those days to brief the case and have a final hearing on the merits. A court of appeals must hear and render a final determination of an appeal within 120 days after the reply brief is filed. 28 U.S.C. § 2266. Fifth, no amendments to a habeas petition subject to Chapter 154 are permitted after the filing of the answer to the petition, except on certain grounds set forth in § 2244(b). These are the procedural benefits to the "opt in" provisions of § 2261 and § 2266. These new procedures, however, are unrelated to the amendments to § 2254, which in large measure merely codify existing habeas corpus law. See McCleskey v. Zant, 499 U.S. 467, 111 S. Ct. 1454, 113 L. Ed.2d 517 (1991); Keeney v. Tamayo-Reyes, 504 U.S. 1, 112 S. Ct. 1715, 118 L. Ed.2d 318 (1992); Coleman v. Thompson, 501 U.S. 722, 111 S. Ct. 2546, 115 L. Ed.2d 640 (1991). The Act, moreover, qualifies the standard for review of the fact-finding of the state courts. Clearly, these provisions of the Act are subject to the normal statutory interpretation that, in the absence of indication to the contrary, the provisions are effective upon enactment. At least one district court has carefully analyzed the legislative intent and concluded that "Congress intended that the amendments take effect at the same time Chapter 154 became operative, on the date of enactment." It is unlikely

36

that Congress intended for the amended versions of 28 U.S.C. § 2254, 2253, and 2254 to affect only the cases falling under Chapter 154. Section 107(c) of the Act states that the new "Chapter 154 . . . shall apply to cases pending on or after the date of the enactment." In all probability, Congress expressly addressed the application of Chapter 154 because of the unique relationship that the chapter has to future modifications of state procedures in some states. It is not surprising when viewed in that light that Congress expressly declared its intention that Chapter 154 could apply to capital cases "currently pending" in federal court where the state already had standards in place that satisfied the chapter's new requirements. However, to obtain the expedited review set out within the chapter, the state would be required to adopt a unified appeal system and provide for the appointments of counsel. Neither requirement, however, affects the application of the April 1996 amendments to § 2254(b) and other sections of the statute that are relevant to Neelley's petition. Finally, for reasons fully set forth below, Neelley's petition does not fall in either of the narrow exceptions of 28 U.S.C. § 2254(b).

## CLAIM I.

The determination of whether an attorney has provided constitutionally effective assistance of counsel is a mixed question of law and fact. Martin v. Kemp, 760 F.2d 1244 (11th Cir. 1985). To establish that her trial counsel was ineffective, Petitioner must demonstrate that (1) French's performance was deficient because it fell below an objective standard of reasonableness and (2) that there is a reasonable probability that but for the deficiency the result of the trial would have been different. See Strickland v. Washington, 466 U.S. 688, 694, 104 S.

Ct. 2052, 2064, 2068, 80 L. Ed.2d 674 (1984).[4] Prior to the amendments to 28 U.S.C. § 2254 in

April of 1996, a state court's determination of effective assistance of counsel was not entitled to a

presumption of correctness under Sumner v. Mata, 449 U.S. 539 (1981), and 28 U.S.C. §

2254(d). However, specific underlying factual findings were entitled to substantial deference.

Lancaster v. Newsom, 880 F.2d 362 (11th Cir. 1989). Before April 1996, the fact was also clear

that the petitioner bore the burden of proof in a § 2254 action to demonstrate by a preponderance

of the evidence that his counsel was ineffective, either at trial or on appeal. Songer v.

Wainwright, 733 F.2d 788, 791 (11th Cir. 1984); U.S. v. Kilian, 639 F.2d 206, 210 (5th Cir.

1981). The burden of proof in a habeas corpus action remains with the petitioner throughout the

proceeding. See, e.g., Jones v. Estelle, 632 F.2d 490, 491-92 (5th Cir. 1980); Rhodes v. Estelle,

582 F.2d 972, 973 (5th Cir. 1978); see also Roberts v. Wainwright, 666 F.2d 517, 519 n.3 (11th

Cir. 1982).[5]

Under the first, or performance, prong of the Strickland test, a reviewing court must

determine whether counsel's performance was so deficient that he was not functioning as the

"counsel" guaranteed by the Sixth Amendment. Strickland, 466 U.S. at 687, 104 S. Ct. at 2064.

---

[4] In Strickland, the Court held that the test has two components:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

466 U.S. at 687.

[5] The 1996 amendments to § 2254 established a burden on a petitioner to prove by "clear and convincing evidence" that she has established a practical predicate sufficient to warrant relief. It would appear that evidentiary standard is applicable to ineffective assistance of counsel claims. See, e.g., Bush v. Singletary, 99 F.3d 373 (11th Cir. 1996). It is not clear, however, whether the amendments have modified the standard of review to mixed questions of law and fact.

A convicted defendant must identify the specific acts or omissions she alleges were not the result of reasonable professional judgment on the part of counsel. The court must then decide whether, in light of all the circumstances facing trial counsel, his conduct fell within the wide range of professionally competent assistance expected of an attorney. Gates v. Zant, 863 F.2d 1492, 1497 (11th Cir. 1989). As required by the Supreme Court in Strickland, a district court must judge the reasonableness of the challenged conduct on the facts of the particular case as viewed at the time of the conduct. A district court must always "keep in mind that counsel's function, as elaborated in prevailing professional norms, is to make the adversarial testing process work in the particular case." Id. at 690, 104 S. Ct. at 2066. The Supreme Court has specifically admonished that the duty of a federal court sitting in review of a state court proceeding "is not to grade counsel's performance." Id. at 697, 104 S. Ct. at 2069. The ultimate focus of the inquiry must be on the fundamental fairness of the proceeding, the result of which is challenged. Id. at 696, 104 S. Ct. at 2069. The role of a federal court in collaterally reviewing a state judicial proceeding is not to point out counsel's errors, but to determine whether counsel's performance in a given proceeding was so beneath the prevailing professional norms that the defendant was denied the Sixth Amendment guarantees to counsel. Bertolotti v. Dugger, 883 F.2d 1503, 1510 (11th Cir. 1989).

A finding of unreasonable or unprofessional conduct on the part of counsel is not in and of itself sufficient to entitle a habeas corpus petitioner to relief. The second part of the test enumerated in Strickland is often called the "prejudice" prong and requires a defendant to show that "a reasonable probability exists that, but for counsel's unprofessional errors, the results of the proceeding would have been different." Strickland, supra, at 694, 104 S. Ct. at 2068; see Harrison v. Jones, 880 F.2d 1279, 1281 (11th Cir. 1989). A reasonable probability is a

probability sufficient to undermine confidence in the outcome. Strickland, supra, at 694, 104 S.

Ct. at 2068.

The Strickland standard for ineffective assistance of counsel may be different if there is an

actual conflict of interest. The Court stated:

> In Cuyler v. Sullivan, 446 U.S., at 345-350, the Court held that prejudice is
> presumed when counsel is burdened by an actual conflict of interest. In those
> circumstances, counsel breaches the duty of loyalty, perhaps the most basic of
> counsel's duties. Moreover, it is difficult to measure the precise effect on the
> defense of representation corrupted by conflicting interests. Given the obligation
> of counsel to avoid conflicts of interest and the ability of trial courts to make early
> inquiry in certain situations likely to give rise to conflicts, see, e.g., Fed. Rule
> Crim. Proc. 44(c), it is reasonable for the criminal justice system to maintain a
> fairly rigid rule of presumed prejudice for conflicts of interest. Even so, the rule is
> not quite the *per se* rule of prejudice that exists for the Sixth Amendment claims
> mentioned above. Prejudice is presumed only if the defendant demonstrates that
> counsel "actively represented conflicting interests" and that "an actual conflict of
> interest adversely affected his lawyer's performance." Cuyler v. Sullivan, supra, at
> 350, 348 (footnote omitted).

Strickland v. Washington, 466 U.S. at 692.

Prejudice from ineffective assistance of counsel may be presumed only where there is an

actual or constructive denial of counsel altogether for whatever reason. Strickland, supra, at 692,

104 S. Ct. at 2067; see also U.S. v. Cronic, 466 U.S. 648, 659 n.25, 104 S. Ct. 2039, 2047 n.25,

80 L. Ed.2d. 657, 668 n.25 (1984). Prejudice may be presumed only where there is a fundamental

breakdown in the adversarial process. Blake v. Kemp, 758 F.2d 523, 533 (11th Cir. 1980)

(noting "the presumption of prejudice would be proper where counsel's representation was so

deficient as to amount in every respect to no representation at all." (Emphasis added)). In the

absence of such a fundamental breakdown in the adversarial system, the burden rests squarely

with the petitioner to demonstrate the alleged prejudice from every conduct by counsel which is

•

40

deemed to be representation below the objective standard of reasonableness.

## A. The Publicity Contract

At the outset, the court notes the extreme ethical and judicial concerns generated by the execution of an attorney-client contract giving the attorney publicity rights in his client's life-story. Such concerns are highly relevant in a case, as here, that is sensational on its face. The evidence here suggests that the attorney's conduct may have been bizarre and at the far extreme. Nevertheless, this court is constrained in its review by the statutory limits imposed by Congress in the Act.

Petitioner's claim that her trial counsel labored under an actual conflict of interest that denied her the effective assistance of counsel was raised in the state trial court, the Alabama Court of Criminal Appeals, and in a three-day state court evidentiary hearing in Petitioner's second state post-conviction proceeding. In each instance, the courts denied the claim on the merits. As a result, the general rule of newly amended § 104(d) appears to procedurally bar relief, absent the claim fitting within an exception.

The record indicates that the publicity contract was executed on June 24, 1983, three months after the trial and after the filing of a motion for new trial. French admitted that, years after the trial, he negotiated with various media representatives, but that no agreement was ever reached. French did copyright an appellate brief and listed as its alternative title, "The Murder Trial of Judy Neelley." Also, French received approximately $10,000 for consulting with Fox Television regarding a documentary on the case. Nevertheless, the Alabama Court of Criminal Appeals ruled that, "it is clear from the record that the appellant's attorney zealously and wholeheartedly represented the interests of [Petitioner], and earnestly participated in all aspects of

41

the proceeding." Neelley v. State, 642 So. 2d 494 (1993). A fact supporting this finding is that French persuaded the jury in a capital case to recommend a life sentence without parole.

The state court factual findings in this matter are presumed correct. Petitioner attempts to rebut this presumption with mere hypotheticals and possibilities. At no time has Petitioner produced any tangible evidence demonstrating that French deliberately placed his own agenda above that of his client before and during trial. Moreover, Petitioner has not produced evidence sufficient to overcome the presumption that French provided reasonable professional assistance. In light of the foregoing, the state court adjudication of the claim did not result in a decision that was contrary to, nor which involved an unreasonable application of, clearly established Federal law as determined in Strickland. Nor did the state court adjudication result in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Therefore, a writ of habeas corpus will not be granted with respect to this claim and a further evidentiary hearing is denied.

### B. Per Se Ineffective Assistance of Counsel

Petitioner's claim that the unprofessional, unethical, and immoral conduct of her trial counsel established per se ineffective assistance of counsel, thereby denying her Sixth Amendment rights, was raised in the trial court, the Alabama Court of Criminal Appeals, and in a three-day state court evidentiary hearing in Petitioner's second state post-conviction proceeding. In each instance, the courts denied the claim on the merits. As a result, the general rule of newly amended § 104(d) appears to procedurally bar relief, absent the claim fitting within an exception.

In addressing this claim, the Alabama Court of Criminal Appeals phrased French's views as follows:

42

> [H]e is a mystic,...he is clairvoyant and a prophet,...he hears voices and responds
> to them, and...he possesses the paranormal power to 'sparkle' and to send 'blue
> beams of energy.'

Neelley v. State, 624 So. 2d at 494.  French actually testified and agreed with this

characterization.  The Supreme Court, however, has not ruled that unconventional personal

beliefs automatically render an attorney's performance deficient or prejudicial.  Moreover,

Petitioner failed to create any connection between French's beliefs and his trial work.  French

testified that his beliefs in no way affected his work.  Although French's view are somewhat odd,

Petitioner failed to demonstrate how such views affected his "moral character", and, hence, his

representation.

In light of the established law, and mindful of the highly deferential standard of scrutiny,

this court cannot rule that Petitioner received ineffective assistance of counsel.  Furthermore, the

state courts made reasonable determinations of the facts in light of the evidence presented.

Petitioner has not proffered clear and convincing evidence to rebut the presumption of

correctness.  Therefore, a writ of habeas corpus will not be granted with respect to this claim and

an additional hearing is denied.

### C.  Trial Counsel's Performance

#### (1) Failure to Present a Battered Woman Defense

Petitioner's claim that French deficiently failed to adequately investigate, prepare, and

present a defense based on the Battered Woman Syndrome was raised in the trial court, the

Alabama Court of Criminal Appeals, and in a three-day state court evidentiary hearing in

Petitioner's second post-conviction proceeding.  In each instance, the state courts denied the claim

on the merits.  As a result, the general rule of newly amended § 104(d) appears to procedurally

bar relief, absent the claim fitting within an exception.

The record indicates that French pursued a defense based primarily on the fact that Petitioner was subject to severe physical and psychological abuse by her husband. Despite not raising the defense by name, French contended that Petitioner lacked the necessary criminal intent due to the abuse. Also, French referred to the fact that Petitioner was "brainwashed" into acting as a mere extension of her husband. The Alabama Court of Criminal Appeals noted that Petitioner's defense was a combination of duress, the battered woman syndrome, and coercive persuasion. Neeley v. State, 642 So. 2d 494, 506 (Ala. Crim. App. 1993). Petitioner testified that she was dominated, manipulated, and trained like an animal. These facts support the state court conclusion that French defended Petitioner in a similar manner as called for under the Battered Woman Syndrome defense. Such is a reasonable determination of the facts in light of the evidence presented in the state courts.

Although the defense may have been more effective if labeled "The Battered Woman Syndrome," this court must avoid second-guessing the trial counsel and evaluate the conduct from counsel's perspective at the time. See, e.g., Strickland v. Washington, 466 U.S. 668, 687-689, 104 S. Ct. 2052, 2065, 80 L. Ed.2d 674 (1984). French's failure to "properly" label the defense is not an error which violates Constitutional rights. Due deference requires a conclusion that the state court decisions were not contrary to nor an unreasonable application of clearly established Federal law, as determined by the Supreme Court.

Further, Petitioner's analysis of her "battered woman syndrome defense" may be fundamentally flawed. Neeley's own expert, testifying at a hearing on her first petition for extraordinary relief within the State of Alabama, stated that the battered woman syndrome

44

defense had been applied exclusively to cases in which the alleged victim murdered her batterer. In 1983, the defense had not been employed as would have been required in Petitioner's case. Second, Petitioner's observation that her only viable defense was "insanity" itself demonstrates French's quandary in attempting to construct a defense to a vile crime. Petitioner does not direct this court to any conclusion of any psychologist, psychiatrist, or lay-person to suggest that she was insane at the time she committed the acts for which she has been convicted. French attempted to establish that Neelley was not responsible for her acts because of her diminished capacity to make judgments independent of Alvin Neelley. Neelley v. State, 494 So. 2d 669 (Ala. Crim. App. 1985). Labeling this defense as "battered woman's syndrome" would have fared no better. In Hill v. State, 507 So. 2d 554, 556 (Ala. Crim. App. 1987), the court observed that under Alabama law, a defendant is either sane or he is not. In the same case, the court held that a trial judge properly excluded an expert's testimony that the defendant in that case was a victim of the "battered spouse syndrome." The court held that the danger of a jury's according undue weight to unproven and perhaps unreliable scientific testimony justifies excluding such evidence. the battered spouse syndrome has been held to fail the Frye test. Id. Petitioner has not suggested that a psychologist would have testified that she was a victim of a "battered spouse syndrome" or, more importantly, that an expert would have been permitted to so testify in 1983.

In light of the established law, and mindful of the highly deferential standard of scrutiny, this court cannot rule that Petitioner received ineffective assistance of counsel. Furthermore, the state courts made a reasonable determination of the facts in light of the evidence presented. Petitioner has not proffered clear and convincing evidence to rebut the presumption of correctness. Therefore, a writ of habeas corpus will not be granted with respect to this claim and

an additional evidentiary hearing is denied.

### (2) Alleged Sexual Harassment

Petitioner's claim that French sexually harassed her, thereby denying her effective assistance of counsel, was raised in the trial court and the Alabama Court of Criminal Appeals. In each instance, the state courts denied the claim on the merits. As a result, the general rule of newly amended § 104(d) appears to procedurally bar relief, absent the claim fitting within an exception.

The Alabama Court of Criminal Appeals specifically noted that while French's actions may have constituted a basis for legal malpractice and emotional distress, the record did not indicate how this conduct resulted in providing ineffective assistance of counsel. Neelley v. State, 624 So. 2d at 494. Petitioner has failed to objectively show how this behavior specifically affected French's performance in the case. Petitioner merely recounts details of the alleged conduct rather than demonstrating concrete examples of any prejudicial effect. The Act requires clear and convincing evidence to rebut a state court finding. As Respondent correctly notes, the court cannot "'blindly accept speculative and inconcrete claims' as the basis upon which a hearing will be ordered." Raulerson v. Wainwright, 753 F.2d 869 (11th Cir. 1985), citing, Baldwin v. Blackburn, 653 F.2d 942, 947 (5th Cir. 1981).

Petitioner has failed to establish that the state court adjudication resulted in a decision that was contrary to, or involved an unreasonable application of, the Strickland standard. Moreover, she has failed to show that the state courts decided the case based on an unreasonable determination of the facts in light of the evidence presented in the state courts. Therefore, a writ of habeas corpus will not be granted with respect to this claim and an additional evidentiary

46

hearing is denied.

### (3) Failure to Raise Viable Claims

Petitioner's claim that French failed to raise viable claims thereby violating her right to effective assistance of counsel was raised in the trial court and the Alabama Court of Criminal Appeals. In each instance, the state courts denied the claim on the merits. As a result, the general rule of newly amended § 104(d) appears to procedurally bar relief, absent the claim fitting within an exception.

Petitioner fails to specify what the allegedly viable claims were. Moreover, the Supreme Court has ruled that "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable..." Strickland, 466 U.S. at 690. Petitioner does not suggest how French's "failure" deprived her of a fair trial. See United States v. Cronic, 466 U.S. 648, 658 (1984) ("Absent some effect of challenged conduct on the reliability of the trial process, the Sixth Amendment guarantee is generally not implicated."). Therefore, a writ of habeas corpus will not be granted with respect to this claim and an additional evidentiary hearing is denied.

### (4) Failure to Object to the Prosecutor's Use of Peremptory Challenges

Petitioner's claim that French rendered ineffective assistance of counsel because he failed to raise a challenge under Batson v. Kentucky, 476 U.S. 79, 106 S. Ct. 1712, 90 L. Ed.2d 69 (1986) is procedurally barred. A federal habeas corpus court will not address an issue if the petitioner may not pursue that issue in state court because of a procedural default unless she can overcome this obstacle by showing cause for and actual prejudice from the default. Engle v. Isacc, 456 U.S. 107, 102 S. Ct. 1558, 71 L. Ed.2d 783 (1982); Wainwright v. Sykes, 433 U.S.

722, 97 S. Ct 2497, 53 L. Ed.2d 595 (1977). Petitioner attempted, but was not allowed, to raise

this claim in her second state post-conviction proceeding. The trial court's ruling was affirmed on

appeal. Neelley v. State, 642 So. 2d at 496-97. Petitioner's failure to timely raise this claim in

her second post-conviction proceeding constitutes a procedural default under state law which bars

subsequent federal habeas corpus review. Weeks v. Jones, 26 F.3d 1030, 1043 (11th Cir. 1994);

see, e.g., Richardson v. Johnson, 864 F.2d 1536, 1540-42 (11th Cir.), cert. denied, 490 U.S. 1114

(1989). Moreover, Petitioner made no effort to establish the necessary "cause" and "actual

prejudice" to overcome this procedural bar. Consequently, this claim is rejected.

## CLAIM IV.

Petitioner's claim that the trial court admitted her confession in violation of her Fifth,

Sixth, Eighth, and Fourteenth Amendment rights was raised in the trial court and in the Alabama

Supreme Court. Ex parte Neelley, 494 So. 2d 697 (Ala. 1986). These courts denied the claim on

the merits. As a result, the general rule of newly amended § 104(d) appears to procedurally bar

relief, absent the claim fitting within an exception.

The Alabama Supreme Court found that Miranda warnings were given and that

Petitioner's confession was voluntary. Neelley, 494 So. 2d at 699. The court quoted extensively

from the suppression hearing. The court also noted that both in the State's case-in-chief and in

cross-examination that the State clearly established that Miranda warnings were given. The court

took these facts, along with those referred to in the opinion of the Court of Criminal Appeals, and

found a sound basis for finding that Petitioner understood her Miranda rights, including the right

to counsel, yet knowingly and intelligently waived them.

The Alabama Supreme Court also ruled, based on Moran v. Burbine, 475 U.S. 412, 106

S. Ct. 1135, 89 L. Ed.2d 410 (1986), that neither Petitioner's Fifth nor Sixth Amendment rights were violated by the failure of the interrogating authorities to inform her of the presence of an attorney who was present at the request of a third party.

Neither finding resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law. Moreover, the decisions were based on reasonable determinations of the facts in light of the evidence presented in the State court proceedings. Petitioner has failed to present sufficient evidence to rebut the State court conclusions. Therefore, a writ of habeas corpus will not be granted with respect to this claim and an additional evidentiary hearing is denied.

## CLAIM V.

Petitioner's claim that at the time of her confession she suffered from a psychological and emotional impairment that rendered her confession involuntary was raised in the trial court and the Alabama Supreme Court. Ex parte Neelley, 494 So. 2d 697 (Ala. 1986). In each instance, the courts denied the claim on the merits.

Even assuming that Petitioner's mental state somehow related to her confession, "[C]oercive police activity is a necessary predicate to the finding that a confession is not 'voluntary'..." Colorado v. Connelley, 479 U.S. 157, 107 S. Ct. 515, 93 L. Ed.2d 473 (1986). Although courts are tending to give more significance to the mental condition of the defendant in determining "voluntariness", "...this fact does not justify a conclusion that a defendant's mental condition, by itself and apart from its relation to official coercion, should ever dispose of the inquiry..." Id.

The state courts findings were both consistent with clearly established law and were

49

reasonably related to the facts in light of the evidence presented in state court. Therefore, a writ of habeas corpus will not be granted with respect to this claim and an additional evidentiary hearing is denied.

## CLAIM IX.

Petitioner's claim that the prosecution withheld material exculpatory letters seized in a search of Petitioner's husband's parents' home was raised in her first state post-conviction proceeding. The claim was denied on the merits.

In Brady v. Maryland, the Supreme Court held that the suppression of evidence favorable to an accused violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution. 373 U.S. 83, 83 S. Ct. 1194 (1963). The state court held that none of the letters in question were material to guilt or punishment. This finding is presumed correct absent clear and convincing evidence from the petitioner that demonstrates otherwise. Petitioner merely states a conclusion that the letters were exculpatory. She offers no reasons or support. As such, the decisions of the state courts stand. Therefore, a writ of habeas corpus will not be granted with respect to this claim and an additional evidentiary hearing is denied.

## CLAIM XI.

Petitioner raised her claim - that she was denied her right to an impartial jury because of the inclusion of a juror who had charges pending against her by the same district attorney - in the state trial court and in the Alabama Court of Criminal Appeals. Neelley v. State, 494 So. 2d 669 (Ala. Crim. App. 1985). In each instance, the state courts denied the claim on the merits.

These state court findings must stand because Petitioner has not demonstrated how the

inclusion of this juror prejudiced her trial. She instead relies on a conclusory allegation that the juror's false response to a voir dire question prejudiced her trial. This type of allegation does not rise to the level of clear and convincing evidence needed to rebut the state court finding. Therefore, a writ of habeas corpus will not be granted with respect to this claim and an additional evidentiary hearing is denied.

## CLAIM XII.

Petitioner raised her claim - that Witherspoon/Witt[6] voir dire creates a jury inclined to convict - in the Alabama Supreme Court. Ex parte Neelley, 494 So. 2d 697 (Ala. 1986). The Alabama Supreme Court noted that this precise question was decided by the United States Supreme Court in Lockhart v. McCree, 476 U.S. 162, 106 S. Ct. 1758, 90 L. Ed.2d 137 (1986). In Lockhart, the court held that the Constitution does not prohibit the removal for cause of prospective jurors whose opposition to the death penalty is so strong that it would prevent or substantially impair the performance of their duties as jurors at the sentencing phase of the trial. 476 U.S. at 165.

The state courts findings were both consistent with clearly established law and were reasonably related to the facts in light of the evidence presented in state court. Therefore, a writ of habeas corpus will not be granted with respect to this claim and an additional evidentiary hearing is denied.

Petitioner's remaining claims under this heading are addressed elsewhere.

## CLAIM XIV.

---

[6] Witherspoon v. Illinois, 391 U.S. 510, 88 S. Ct. 1770, 20 L. Ed.2d 776 (1968). Wainwright v. Witt, 469 U.S. 412, 105 S. Ct. 844, 83 L. Ed.2d 841 (1985).

Petitioner basis this claim in part on the allegation that the trial court failed to adequately control the courtroom audience so as to minimize the impact of community pressures. This claim was raised in the trial court and denied on the merits.

Once again, Petitioner merely states a conclusory allegation without proffering evidence in support. This type of allegation does not rise to the level of clear and convincing evidence needed to rebut the state court finding. Therefore, a writ of habeas corpus will not be granted with respect to this claim and an additional evidentiary hearing is denied.

Petitioner's remaining claims under this heading are addressed elsewhere.

### CLAIMS II, III, VII, VIII, X, XIII, XIV, XV, XVII, XVIII, XIX, & XX.

A federal habeas corpus court will not address an issue if the petitioner may not pursue that issue in state court because of a procedural default unless she can overcome this obstacle by showing cause for and actual prejudice from the default. Engle v. Isacc, 456 U.S. 107, 102 S. Ct. 1558, 71 L. Ed.2d 783 (1982); Wainwright v. Sykes, 433 U.S. 72, 97 S. Ct. 2497, 53 L. Ed. 2d 594 (1977). Alabama has contemporaneous objection rules that preclude appellate review of issues that could have been raised at trial but were not. Rule 32.2(a)(3), Ala.R.Crim.P; Jackson v. State, 501 So. 2d 542, 544 (Ala. Crim. App. 1986), cert denied, 483 U.S. 1010, 107 S. Ct. 3242 (1987).. Since Petitioner could have brought the claims in state court and failed to do so, she is thereby barred from pursuing them in federal court. Moreover, Petitioner made no effort to establish the necessary "cause" and "actual prejudice" to overcome this procedural bar. Consequently, these claims are rejected.[7]

---

[7] It may, however, be reasonably arguable that French's failure to raise these issues as the result of a conflict of interest was ineffective assistance which is "cause" to excuse the default.

With regard to these claims, the court also makes the following observations in passing.
Claim XX, in addition to its procedural bar, fails to identify any specific fact upon which the court
could consider relief. "It is incumbent upon the petitioner to provide evidence supportive of a
federal constitutional deprivation correctable by the issuance of a writ of habeas corpus." Jones v.
Estelle, 632 F.2d 490, 492 (5th Cir. 1980). Claim XIX is subject to the considerable limitations
of Victor v. Nebraska, 511 U.S. 1, 114 S. Ct. 1239, 127 L. Ed.2d 583 (1993). With regard to
Claim XVII and XVIII, it is important to note that the alleged "failure" to make such objections in
1983 was not ineffective assistance of counsel under the law of the Eleventh Circuit. See Pitts v.
Cook, 923 F.2d 1508 (11th Cir. 1991). The claims are also not to be applied retroactively.
Teague v. Lane, 489 U.S. 288 (1989). Lastly, the first part of the prosecutorial misconduct
argument, Claim XIII, which relates to the prosecution's statement concerning the victim in the
case appears to be predicated on South Carolina v. Gathers, 490 U.S. 805, 109 S. Ct. at 2207,
104 L. Ed.2d 876 (1989). A failure to object to a "victim's statement" is not grounds for habeas
relief in that South Carolina v. Gathers is not retroactive. Moreover, the "victim impact"
evidence has since been deemed admissible. In Payne v. Tennessee, 501 U.S. 808, 111 S. Ct.
2597, 115 L. Ed.2d 720 (1991), the Supreme Court reconsidered the holdings of Booth v.
Maryland and South Carolina v. Gathers which had found the admission of victim impact evidence
during the penalty phase of a capital trial to violate the Eighth Amendment. The Court ruled that
upon reconsideration, "we are now of the view that the state may properly conclude that for a
jury to access meaningfully the defendant's moral culpability and blameworthiness, it should have
before it at the sentencing phase evidence of the specific harm caused by the defendant." Id. at
2607. This conclusion ultimately led the court to hold that "if the state chooses to permit the

53

admission of victim impact evidence and prosecutorial evidence arguments on that subject, the Eight Amendment erects no per se bar." Id. at 2608.

### CLAIM XVI.

A federal habeas corpus court will not address an issue if the petitioner may not pursue that issue in state court because of a procedural default unless she can overcome this obstacle by showing cause for and actual prejudice from the default. Engle v. Isacc, 456 U.S. 107, 102 S. Ct. 1558, 71 L. Ed.2d 783 (1982); Wainwright v. Sykes, 433 U.S. 72, 97 S. Ct. 2497, 53 L. Ed. 2d 594 (1977). Petitioner's claim was not raised on direct appeal. Alabama law precludes collateral review of issues that could have been but were not raised on direct appeal. Rule 32.2(a)(5), Alabama Rules of Criminal Procedure; Magwood v. Smith, 791 F.2d 1438, 1444 (11th Cir. 1986); Ex parte Ellison, 410 So. 2d 130, 132 (Ala. 1982). Since Petitioner could have brought the claims in state court and failed to do so, she is thereby barred from pursuing them in federal court. Moreover, Petitioner made no effort to establish the necessary "cause" and "actual prejudice" to overcome this procedural bar. Consequently, this claim is rejected.[8]

### CLAIM VI.

A federal habeas corpus court will not address an issue if the petitioner may not pursue that issue in state court because of a procedural default unless she can overcome this obstacle by showing cause for and actual prejudice from the default. Engle v. Isacc, 456 U.S. 107, 102 S. Ct. 1558, 71 L. Ed.2d 783 (1982); Wainwright v. Sykes, 433 U.S. 72, 97 S. Ct. 2497, 53 L. Ed. 2d 594 (1977). This claim is also defaulted. Petitioner abandoned this claim on her appeal from the

---

[8] Alabama's capital sentencing structure was approved by the Supreme Court in Baldwin v. Alabama, 472 U.S. 372, 105 S. Ct. 2727, 86 L. Ed.2d 300 (1985) and by the Eleventh Circuit in Hayes v. Alabama, 724 F.2d 131 (1984). Also, see Harris v. Alabama, 513 U.S. 504 (1995).

denial of the second state post-conviction proceeding.  See Esslinger v. Davis, 44 F.3d 1515 (11th Cir. 1995).  As a result, this claim was not fully exhausted, as the state court that is the final arbiter of such collateral attacks on criminal convictions was not afforded a fair opportunity to rule on them.  See Waldrop v. Jones, 77 F.3d 1308, 1318 (11th Cir. 1996); Mitchell v. Southern Guaranty Ins. Co., 485 So. 2d 1138 (Ala. 1986).

### CONCLUSION

For the foregoing reasons, the petition of Judith A. Neelley for a writ of habeas corpus will be denied.

This 23rd day of January, 1997

Robert B. Propst
Senior United States District Judge

SCANNED